Opinion delivered May 18, 1889.

No. 6452.

## W. S. NUCKOLLS *v.* THE STATE.

THEFT—EVIDENCE.—See the opinion and statement of the case for evidence *held* to have been erroneously admitted, because it was hearsay testimony calculated to prejudice the defendant.

APPEAL from the County Court of Clay. Tried below before the Hon. B. F. Turner, County Judge.

This conviction was for the theft of a plow, a double tree, a single tree and clevis, of the aggregate value of six and a half dollars. The penalty assessed was a fine of two hundred dollars and confinement in the county jail for twenty days.

D. Gilvin was the first witness for the State. He testified that in April, 1888, he lived on Mrs. Mason's place, in Clay

county, Texas. A severe rain fall interfered with plowing on Friday, April 20, 1888, and witness's boy, who had been plowing on the place, left the plow and the plow gears—which gears belonged to one Thompson—in the field about twenty feet from the road. Witness and Thompson passed over that road late on Saturday evening, and noticed the plow and gears. Witness remarked: "There is a good chance for somebody to get some gears." Thompson replied that the gears being old and worn, the plow was more likely to be stolen. The plow was next seen by witness on the defendant's place in Buffalo Springs on or about May 20, 1888. When witness and Bill Evans first went to defendant's place the defendant was not at home, and Evans refused to help search defendant's place without a search warrant. Accordingly the witness went to 'Squire Goad and got a search warrant. He then got Constable Jack Evans and Mr. Wear and went to the defendant's west place, which was about five miles distant from his Buffalo Springs place. Thence they went to where defendant was building a tank, about half a mile from the said west place, and there the witness found his clevis, which he fully identified. Thence the witness, Jack Evans and Wear went to defendant's place in Buffalo Springs. Arriving late, they made but a short search, and went to Bill Evans's place and passed the night. Early on the next morning they went back to defendant's house, and were met at the door by the defendant. Jack Evans told defendant that he was hunting for a cast plow that had been stolen from witness, and that he was acting under a search warrant. Defendant replied that there was no such plow on his place, and that no such plow had been on his place since Mr. Burnett's was removed thence during the preceding January. Witness remarked: "That is not the plow I want. I want the one for which you bought the new points that were brought from town to you by Mr. Long." Defendant made no reply, and the witness and his party went to a wagon on the place, where he found his double tree, the same being the double tree of an Osborn mowing machine. Defendant claimed that he brought that double tree from Tarrant county. Jack Evans then arrested defendant, telling him that whatever statement he saw proper to make could be used in evidence against him. Evans then turned defendant over to Wear with instructions to take him to 'Squire Goad, and witness and Evans then went back to the Buffalo Springs place to hunt for the plow. En route they met

Bill Evans, who told them that J. R. Whitley told him, Bill Evans, that the plow was in a rail pile on defendant's place in Buffalo Springs, and that if he, Bill Evans, and witness had looked there for it on the night before, they would have found it. Witness and Jack Evans went to the said rail pile, and there found the said plow, which witness fully identified. They took the plow to 'Squire Goad's office. Goad then asked defendant what should be done with the plow? He replied: "He will swear to it; let him take it." On his cross examination the witness said that the plow was not a Deere plow, and he did not tell Bill Evans and A. D. Long that it was a Deere plow. He did not describe it by the name of the manufacturer, for at that time he did not know it himself.

The State witnesses Wear and Jack Evans corroborated Gilvin in detail as to what transpired during the search for the alleged stolen property, as to the finding of the same and the arrest of the defendant. Wear testified, in addition, that, en route to 'Squire Goad's court with the defendant after his arrest, the defendant requested to be taken by the house of one Parish, so that he might there employ some hands to continue work on a tank he was constructing. Witness stopped on high ground and permitted defendant to go to Parish's house, on his promise to return and accompany him to 'Squire Goad's. Defendant not returning within the time allowed him, witness went to Parish's house and learned that defendant had left. He then rode hurriedly toward the defendant's east or Buffalo Springs place. About a mile distant from that place he overtook defendant and asked him why he had attempted to escape him. He replied that he was going to see one Whitley to get him to work on the tank. Witness then took defendant to 'Squire Goad's office. The witnesses Wear and Jack Evans testified that they had known the defendant for five years, during which time his reputation for honesty was excellent. He was in easy financial circumstances, and able to purchase a car load of plows if he wanted them.

The material part of the testimony of the two Messrs. Long, State's witnesses, was that one of them worked for the defendant, on his place, from March 10 to March 28, 1888, during which time he plowed with a South Bend cast plow, furnished by defendant, and the other witness, about April 20, 1888, at the request of defendant, got a point for a cast plow, at Barber's hardware store in Henrietta, and took it to defendant.

These witnesses also supported the defendant's reputation for honesty.

The State closed.

Bill Evans testified, for the defense, that Gilvin came to witness's house on the day before the arrest of defendant, and he and witness went to defendant's east place to see defendant and search for the plow. Defendant was not at home. Witness then helped Gilvin search the premises for the plow, and did not, as testified by Gilvin, refuse to do so, without a search warrant. Failing to find the plow, Gilvin and witness went to witness's house and spent the night. Gilvin and Jack Evans left early in the morning. During that day, after the arrest of defendant, witness met Gilvin and Jack Evans going towards defendant's east place, and had a conversation with them, but he was satisfied he did not tell them that the missing plow would be found on the rail pile. The said plow was not on the rail pile on the day before, because, if it had been, witness and Gilvin, in passing within ten feet of that pile would certainly have seen it.

A witness for the defense testified that, to his positive knowledge, the defendant, when he moved to Clay county from Tarrant county, brought with him the double and single trees of an Osborn mowing machine, and afterwards used them on his wagon. The witnesses for the defense testified, and counsel for the State admitted, that the reputation of the defendant for honesty was excellent until this charge was brought against him.

*L. C. Barrett*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. That portion of the testimony of the State's witnesses D. Gilvin and Jack Evans, which states that Bill Evans told them that one Whitley said the stolen plow was on a rail pile in defendant's lot, was clearly inadmissible, being hearsay, the said statement of Whitley not having been made in the presence and hearing of defendant.

Under the peculiar facts of this case, said illegal testimony was well calculated to injure the defendant in the trial. Whether or not the defendant had any agency in placing said plow on said rail pile in his lot was a most material issue in the case. On the evening before the plow was found on said rail pile, Gilvin and Bill Evans had searched said premises for said

plow, and had failed to find it. Bill Evans testified that in making said search they had been near to said rail pile, and if the plow had been there he thinks they would have discovered it. He further testified that he did not remember telling said Gilvin and Jack Evans that Whitely had told him the plow was on the said rail pile—did not think he had told them any such thing.

The theory of the defense was that said plow had been placed on the rail pile during the night, pending the search for it, by some person other than the defendant, and without his agency or knowledge, with a view, as the defendant asserted, of "putting up a job on him." It was material error, we think, to admit said testimony, which error, having been properly excepted to, requires a reversal of the judgment.

There are other supposed errors presented by defendant, but, after a consideration of these, we think the only reversible error disclosed by the record is the one above stated, and because of which the judgment is reversed and the cause is remanded.

*Reversed and remanded.*